## AMERICAN SURETY CO. v. CALCASIEU OIL CO.

### No. 457.

District Court, W. D. Louisiana, Lake Charles Division.

March 18, 1933.

See, also (D. C.) 58 F.(2d) 1039.

Denegre, Leovy & Chaffe, of New Orleans, La., for complainants.

Leslie P. Beard, of New Orleans, La., and Cullen R. Liskow, of Lake Charles, La., for respondent Calcasieu Oil Co.

Lewis & Lewis, of Opelousas, La., for respondent Lee H. Bihm.

Ped C. Kay, of De Ridder, La., for respondents Jno. B. Jones, etc.

Thompson & Ferguson, of Leesville, for respondents Kelly-Weber & Co.

McCoy, Moss & King, of Lake Charles, La., for respondents Autrey Oil Co. and others.

Cline, Plauché & Thompson, of Lake Charles, La., for respondent Robt. E. Curtain, ancillary receiver.

Mark C. Pickrel, of Lake Charles, La., for respondent N. C. Skinner.

Hawkins & Pickrel, of Lake Charles, La., for respondent State Bank of Merryville.

DAWKINS, District Judge.

The nature of this case is shown by the opinion handed down herein on June 18, 1932 (D. C.) 2 F. Supp. 200.

A special master was appointed to hear and determine the claims against the fund deposited by the plaintiff. The report has been filed and exceptions thereto have been made as follows:

(1) By the ancillary receiver of the Security Union Insurance Company, principal in the bond, proceeds of which were paid into this court by the interpleader, plaintiff;

(2) Jointly by John B. Jones, Stedman Fruit Company, and Calcasieu Mercantile Company;

(3) By Kelly-Weber & Co.; and

(4) By Lee H. Bihm.

The opposition of the ancillary receiver is based upon the fact that the master declined to permit it to set up an indebtedness against the Union Sulphur Company to offset the latter's claim against the fund, arising from a policy of insurance issued by the Security Union Insurance Company, in favor of the sulphur company, with the amount alleged to be due for premiums on the same policy. If the sulphur company were suing the insurance company on this policy, then I see no reason why the latter could not claim as an offset what was due for premiums. Both obligations flow from the same contract, the one to make good the loss and the other to pay the premium in consideration therefor. Each demand would be one at law, and I think might be heard in the same case, by the court or jury. As a matter of fact, the claims of all the present claimants on this fund, where they arise from insurance policies issued by the insurance company, are such as would have to be enforced on the law side of the court but for the fact that the federal statute and established principles of interpleader actions permit the holder of the fund to bring it into court through a bill in equity to have the rights of the claimants thereto determined as between themselves. That is the thing which gives a court of equity jurisdiction, and having jurisdiction for that purpose, it necessarily has the power to determine the validity of the claims against the fund as between those asserting an interest therein, although their demands be based upon causes of action cognizable at law. I, therefore,

think this court in the present proceeding has the jurisdiction and duty to determine all issues as to the amount and validity of the claims against the insurer, principal in the bond, the proceeds of which have been deposited. The principal or its receiver was allowed to intervene herein for the reason that I felt it had an interest in seeing that only valid claims against it were allowed, and any ground which it can sustain for reducing any such claim should be heard. Of course, the receiver cannot share in the fund or obtain any judgment against it, but the company which he represents and its estate will be liable to the interpleader ultimately for whatever is paid from the fund, and I believe should be permitted to combat the demand of any claimant against it in the same manner as it could if the action was directed against itself. The situation here, to this extent, is different to what it would be in an ordinary interpleader suit by an insurance company as to which the interpleader had discharged its contract by depositing the amount of the policy into court and cited the claimants to the fund to assert their rights thereto before the court having jurisdiction. In the present case the fund has been paid in, not by the insurer, but by the surety on the bond given by the insurance company in compliance with a state statute for the benefit of policies issued in this state by the principal in that bond, and the surety, of course, will have its right of action against the Security Union Insurance Company, or its estate, for the amount of this deposit. If it were possible for the insurance company to show that the valid claims against the deposit were less than the amount of the latter, it would result in a reduction of the surety company's claim by whatever amount was saved. The fact that it now appears the claims against the fund will be more than sufficient to consume it does not change the legal situation, in my judgment. This court having assumed jurisdiction under the statute, for the purpose of distributing the fund, has the power to grant full relief, including the allowance of a proper set-off against any particular claim growing out of any contract which entitles a claimant to pursue the fund. 21 C. J. p. 133 et seq., verbo "Equity," §§ 111 and 112; Ib., p. 134, et seq., § 117 et seq. The ruling of the master upon this claim will, therefore, be set aside and the receiver allowed a hearing upon his plea of off-set against the claim of the Union Sulphur Company.

■ The claim of John B. Jones is based merely upon a judgment obtained as an ordinary creditor against one N. C. Skinner, who held a policy in the insurance company, with no lien by seizure or otherwise, against the fund, and it was, therefore, properly disallowed.

The claim of Stedman Fruit Company was also against the said Skinner, but secured by a chattel mortgage upon a refrigerator, etc., in the leased premises, which were consumed by fire, and under a statute of Louisiana, bears as a lien upon the proceeds of the insurance policy as against Skinner.

■ The Calcasieu Mercantile Company had, previous to the filing of this interpleader suit, obtained judgment against Skinner and seized the proceeds of the policy in the hands of the insurance company, through process served upon the Secretary of State, which would have impounded any funds deposited with that officer under the laws of Louisiana. The state statute having permitted the insurance company to give a surety bond in place of the cash deposit, I think the result is the same and had the effect of seizing the benefits under this bond in so far as they inured to the policy held by Skinner, and thereby created a lien, in favor of the claimant, subject to the rights of a bona fide assignee of this particular policy.

■ As to the claim of Kelly-Weber & Co., the answer filed by it in this proceeding, with the exhibit attached, including the suit in the state court for a writ of attachment, does not show that any seizure was made or garnishment served upon the insurance company or Secretary of State. Neither does it appear that there was a reasonable possibility of identifying or telling what quantity of goods sold by the claimant to Skinner were in the building at the time it was destroyed by fire, and hence the master's ruling disallowing this claim against the fund was correct.

It would appear, from the pleadings and contention of the Stedman Fruit Company and Calcasieu Mercantile Company, that they will be able to show that the State Bank of Merryville was not a creditor, or if so, and a lawful assignment of the policy was made, the indebtedness due the State Bank was less than the amount claimed and allowed to it against the fund. Hence, they should be allowed to contest the bank's claim.

As to the opposition of Lee H. Bihm, I think the master's finding was correct that the policy issued to McGee, against whom Bihm obtained a judgment for personal injuries, was a Texas contract and not covered by the Louisiana statute and the bond filed with the Secretary of State to protect policyholders

under insurance written in Louisiana. For this reason, I am of the opinion that the ruling of the master on this claim will have to be sustained.

As to the claims thus reopened, the parties will be allowed to take their testimony by commission and to submit the matters upon briefs, if desired, or the same can be presented upon oral argument at any point where the court may be sitting after the testimony is taken, and at all events, when the next term at Lake Charles is held.

Final decree will not be signed until these items have been disposed of.